IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ROBERT D. WALTER,

                          Petitioner,              Civil Action No.
                                                   9:06-CV-0558 (DNH/DEP)

          vs.

WILLIAM LAPE,

                          Respondent.

_____

APPEARANCES:

FOR PLAINTIFF:

ROBERT WALTER, *Pro Se*
99-B-0269
Box 3600
Marcy Correctional Facility
Marcy, New York  13403

FOR DEFENDANT:

HON. ANDREW M. CUOMO          MALANCHA CHANDA, ESQ.
Office of the Attorney General    Assistant Attorney General
State of New York
120 Broadway
New York, New York 10271

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

       Petitioner Robert D. Walter, a New York State prison inmate as a result

of a 1998 conviction entered in Cayuga County Court for two counts each of

sexual abuse in the first degree and endangering the welfare of a child, has

commenced this proceeding seeking federal habeas intervention pursuant to

28 U.S.C. § 2254.  In his petition, Walter contends that his conviction was the

product of a constitutional violation by virtue of the prosecution's failure to

provide his counsel with a videotape recording of the victim's grand jury

testimony, notwithstanding the fact that she testified at trial and his attorney

was provided with a written transcript of her grand jury testimony, asserting

that the videotape represents exculpatory *Brady* material, and in any event

should have been provided for impeachment purposes pursuant to *Rosario*.[1,2]

In opposition to Walter's petition respondent argues that it is patently

untimely, having been filed some four and one-half years after his conviction

became final, and that in any event it is lacking in merit.

Because I find that this proceeding was commenced more than one

---

[1]      The obligation to produce exculpatory material, arising under the due process provision of the Fourteenth Amendment, was the subject of the Supreme Court's seminal decision in *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963).  The requirement in New York to produce certain materials for impeachment of a witness who has testified during a criminal trial stems from the New York Court of Appeals decision in *People v. Rosario*, 9 N.Y.2d 286, 213 N.Y.S.2d 448 (1961).

[2]      The victim's testimony was apparently presented to the grand jury by way of videotape in accordance with authority conferred under New York Criminal Procedure Law ("CPL") § 190.32.

year after petitioner's conviction became final, and discerning no basis to find

tolling, equitable or otherwise, during the relevant time periods, I recommend

dismissal of Walter's petition on this procedural basis.  Addressing the merits

of Walter's petition, and applying the requisite deferential standard, I further

conclude that the state court's rejection of petitioner's *Brady* argument was

neither contrary to, nor an unreasonable application of, clearly established

Supreme Court precedent.  Accordingly, I recommend that Walter's petition

be dismissed.

I.      BACKGROUND

        In or about April of 1998, petitioner was charged by indictment with two

counts each of first degree sexual abuse and endangering the welfare of a

child.  Those charges stemmed from an incident occurring on the evening of

January 24, 1998 when, it was alleged, Walter kissed and inappropriately

touched S.A., the nine year old daughter of an acquaintance, while visiting

her home.[3]

_____

        [3]      Under New York law, "[t]he identity of any victim of a sex offense . . . shall be
confidential.  No . . . court file or other documents, in the custody or possession of any
public officer or employee, which identifies such a victim shall be made available for public
inspection."  N.Y. Civ. Rights Law § 50-b.  In light of this provision, the victim will be
referred to herein as "S.A." so as to ensure his or her privacy.  *See Lucidore v. New York
State Div. of Parole,* 209 F.3d 107, 109 n.4 (2d Cir. 2000), *cert. denied,* 531 U.S. 873
(2000) (reflecting that the requirements of this statute can be satisfied through a court's
use of initials to identify a sex offense victim).

3

The testimony at trial revealed that Walter was at the house of an acquaintance on the evening in question, along with several other individuals all of whom were engaged in playing card games.   Trial Transcript ("TT") 61-63, 85,107-09.   At some point during the evening petitioner left the house and went to the store for the purpose of obtaining soda and candy for children in the residence.  TT 66, 87, 107-109, 218.   Petitioner returned to the friend's house and went upstairs into S.A.'s bedroom, where she was lying on her bed coloring.  TT 64-66, 109-110, 114, 124, 215.

After petitioner left the bedroom and rejoined the other guests playing cards, S.A. reported to her babysitter that petitioner had kissed and touched her inappropriately.  TT 66-69, 79, 88, 104, 110, 123, 127, 142-46, 152-54. When confronted by S.A.'s father regarding the incident, petitioner did not deny her allegations, instead stating that "it wasn't her fault" and that he should not "blame her".  TT 69, 79-80, 89-90, 105, 111, 115-18, 147.   While acknowledging at trial having hugged and kissed S.A. on the evening in question before going to the store, petitioner denied ever touching her in an inappropriate manner.  TT 219-21, 227-28.

II.    PROCEDURAL HISTORY

    A.    State Court Proceedings

4

A jury trial was conducted before Cayuga County Court Judge Peter E. Corning, beginning on September 8, 1998, to address the charges against Walter.  At the close of that trial the jury returned a verdict convicting him on all four counts contained within the indictment.  TT 318-20.  Petitioner was subsequently sentenced on October 16, 1998 to two consecutive indeterminate prison terms of between three and one-half and seven years on each of the two sexual abuse counts, to run concurrently, and consecutive one-year terms on each of the two endangering the welfare of a child charges.[4]

Represented by new counsel, petitioner appealed his conviction to the New York State Supreme Court, Appellate Division, Fourth Department, asserting several errors including, *inter alia*, that he had received ineffective assistance of counsel at trial, that the trial was infected through the admission of impermissible hearsay testimony, and that he was improperly sentenced and his sentence was unduly harsh or severe.  Petitioner's conviction was subsequently affirmed by the Fourth Department by decision

---

[4]     The court has not been provided with a transcript of petitioner's sentencing. Because the issues now raised by Walter do not implicate any alleged sentencing errors, however, this omission of no moment.

issued on May 2, 2001.[5]  *See People v. Walter,* 283 A.D.2d 972, 723

N.Y.S.2d 908 (4th Dep't 2001).  Leave to appeal that determination was

denied by the New York State Court of Appeals on June 5, 2001.  *See* State

Court Records (Dkt. No. 13) Exh. C; *see also People v. Walter*, 96 N.Y.2d

869, 730 N.Y.S.2d 44 (2001).

On May 6, 2005 petitioner, who at this point was unrepresented, moved

to vacate the judgment of conviction pursuant to New York Criminal

Procedure Law ("CPL") § 440.10.  State Court Records (Dkt. No. 13) Exh. D.

In support of his motion petitioner argued that the prosecution had

deliberately withheld from his trial counsel the videotaped grand jury

testimony of S.A., despite a written demand for any such evidence, asserting

that the failure represented a violation of his rights under *Brady* and *Rosario*.[6]

*See id.*  The motion was denied by order issued by the trial court on June 15,

2005.  State Court Records (Dkt. No. 13) Exh. F.  In his decision, Judge

Corning found that plaintiff had failed to allege that the videotape constituted

---

[5]       While certain other issues were raised in petitioner's direct appeal, those
issues were not addressed by the Fourth Department in light of its finding that they were
not properly preserved for review.  *Walter,* 283 A.D.2d at 972, 723 N.Y.S.2d at 908.  The
issue now presented was not among those raised in the Appellate Division.

[6]       In his motion Walter conceded that at or prior to the time of trial he received
a transcript of the videotaped testimony which accurately "reflect[ed] [S.A.'s] Grand Jury
testimony. . ."  *See* Petitioner's Memorandum (State Records) (Dkt. No. 13) Exh. D.  at p.
22.

either *Brady* or *Rosario* material, additionally concluding that petitioner was

not prejudiced by the non-disclosure in light of the fact that S.A. testified at

trial and petitioner was unable to establish that if armed with the videotape

his attorney could have achieved a different outcome at trial.  *Id.*  Leave to

appeal that determination was denied by the Fourth Department on January

10, 2006.  *Id.* Exh. J.

      B.   <u>This Proceeding</u>

Petitioner commenced this proceeding on May 8, 2006.  Dkt. No. 1.

Upon routine, initial review of the petition District Judge David N. Hurd, noting

an apparent failure by Walter to meet the governing one-year statute of

limitations for seeking habeas relief, issued an order dated June 9, 2006

directing him to file an amended petition providing the court with any

information establishing that a sufficient portion of the period between when

his conviction became final and the commencement of this action should be

tolled in order to meet the statute of limitations, and providing that absent

amendment the petition would be dismissed as untimely.  Dkt. No. 3.  Walter

submitted an amended petition filed on June 27, 2006, alleging that despite

his due diligence he was unable to obtain the information necessary to assert

his habeas claim any earlier than May of 2006.  Dkt. No. 4.  Based upon that

information, though without making any final determination regarding

timeliness, Judge Hurd issued a subsequent order on October 19, 2006

approving the amended petition for filing and directing a response on behalf

of William Lape, the named respondent.  Dkt. No. 5.

The court has been provided with a response to the petition on behalf

of the respondent, who is being represented by the New York State Attorney

General, and relevant state records related to petitioner's conviction.

Accordingly, the matter is now ripe for determination and has been referred to

me for the issuance of a report and recommendation, pursuant to 28 U.S.C. §

636(b)(1)(B) and Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

## III.   DISCUSSION

### A.   Statute of Limitations

Enactment of the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), brought about

significant new restrictions on the power of a federal court to grant habeas

relief to a state court prisoner under 28 U.S.C. § 2254.  Among them was the

creation of a one-year limitation period for the filing of such habeas petitions.[7]

---

[7]   The one-year statute of limitations runs from the latest of

(A) the date on which the judgment became final by the
conclusion of direct review or the expiration of the time for

8

28 U.S.C. § 2244(d)(1); *Cook v. New York Div. of Parole*, 321 F.3d 274, 279-80 (2d Cir. 2003).  The AEDPA statute of limitations "reduces the potential for delay on the road to finality by restricting the time that a prospective federal habeas petitioner has in which to seek federal habeas review." *Duncan v. Walker*, 533 U.S. 167, 179, 121 S. Ct. 2120, 2128 (2001).

The obvious starting point for determining the timeliness of a section 2254 habeas petition is a determination of when the challenged conviction became final.  In most instances, a state court conviction becomes final when the time to seek review in the Supreme Court by petition for writ of *certiorari* expires.  *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001), *cert. denied,* 534 U.S. 924, 122 S. Ct. 279 (2001).  In this case, that ninety-day period is

---

seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

measured from the date upon which the New York Court of Appeals denied

petitioner's request for leave to appeal from the Fourth Department's decision

affirming his conviction.  *Pratt v. Greiner,* 306 F.3d 1190, 1195 & n.1 (2d Cir.

2002).  Since Walter's petition for leave to appeal to the New York Court of

Appeals was denied on June 5, 2001, his conviction became final, as he

himself has admitted, on September 3, 2001.  *See* Amended Petition (Dkt.

No. 4) ¶ 2.

The next step in the inquiry is to determine whether any time after a

petitioner's conviction is deemed final is subject to exclusion for limitations

purposes.  The AEDPA's statute of limitations contains a tolling provision

which provides that

> [t]he time during which a properly filed application for
> State post-conviction or other collateral review with
> respect to the pertinent judgment or claim is pending
> shall not be counted toward any period of limitation
> under this subsection.

28 U.S.C. § 2244(d)(2).  This provision

> balances the interests served by the exhaustion
> requirement and the limitation period.  Section
> 2244(d)(2) promotes the exhaustion of state remedies
> by protecting a state prisoner's ability later to apply for
> federal habeas relief while state remedies are being
> pursued.  At the same time, the provision limits the
> harm to the interest in finality by according tolling
> effect only to "properly filed application[s] for State

10

post-conviction or other collateral review."

*Duncan*, 532 U.S. at 179-80, 121 S. Ct. at 2128.  It is well-settled, however, that this savings provision only tolls the statute of limitations during the pendency of a properly-filed state court proceeding; it does not confer a new, one-year period upon commencement of such a review proceeding.  *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir.), *cert. denied*, 531 U.S. 840, 121 S. Ct. 104 (2000).  When such a review proceeding is filed,

> the provision stops, but does not reset, the clock from
> ticking on the time in which to file a habeas petition.  It
> cannot revive a time period that has already expired.
> To allow a belated state court collateral attack to
> revive the AEDPA limitations period would defeat the
> purpose of the AEDPA limit.

*Sorce v. Artuz*, 73 F. Supp.2d 292, 294 (E.D.N.Y. 1999) (citations omitted).  Since petitioner's section 440.10 motion was filed more than one year after his conviction became final, it does not affect the limitations calculus.

In his petition, Walter appears to argue that he should have the benefit of section 2241(d)(1)(D), under which the governing one-year limitation period does not commence until the factual predicate upon which the claim was based could have been discovered through the exercise of due diligence.  The proper task in evaluating this claim is "to determine when a duly diligent person in petitioner's circumstances would have discovered" the

underlying basis for which he seeks habeas relief.  *Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000).  "The statute does not require the maximum feasible diligence, only 'due,' or reasonable diligence."  *Id*. at n.4. The inquiry as to whether a petitioner acted with due diligence, and thus "the date on which the limitations clock began to tick", is admittedly fact-specific. *Id.*

In this case the record firmly belies any claim that by exercise of reasonable diligence Walters could not have discovered the basis for his claims until May 8, 2005, a year before his petition was filed.  Quite to the contrary, the record demonstrates that petitioner knew of the very grounds on which he relies in this action several years before.  Petitioner acknowledges having been provided with the grand jury testimony of various witnesses, including a transcript of S.A.'s testimony, at or about the time of trial, on September 9, 1998.  *See, e.g.,* Petitioner's Section 440.10 Memorandum (State Court Records [Dkt. No. 13 -Exhibit D] at pp. 8, 14.  Those minutes plainly disclosed that the victim's testimony was presented by videotape. *See id.*  Petitioner was therefore fully aware of the factual predicate of his claim, surrounding the refusal of the prosecution to produce the videotape to his counsel, prior to his conviction becoming final and more than seven years

before the filing of the instant petition.  Petitioner is therefore unable to benefit from the narrow exception afforded under section 2244(d)(1)(D).

    In an attempt to salvage his otherwise untimely claim, petitioner also asserts that he should have the benefit of equitable tolling.  Equitable tolling, however, applies "only in the 'rare and exceptional circumstance[ ].' " *Smith*, 208 F.3d at 17 (quoting *Turner v. Johnson*, 177 F.3d 390, 391-92 (5th Cir.1999)) (alteration in original); *see also Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004), *cert. denied*, 546 U.S. 961, 126 S.Ct. 489 (citing *Smith*); *Corrigan v. Barbery*, 371 F. Supp. 2d 325, 330 (W.D.N.Y. 2005) (citing *Smith*); *Austin v. Duncan*, No. 02-CV-0832S, 2005 WL 2030742, at *3 (W.D.N.Y. Aug. 23, 2005).  In this context, equitable tolling of the AEDPA's statute of limitations is only available when "extraordinary circumstances" prevent a prisoner from filing a timely habeas petition.  *Pace v. DiGuglielmo*, 544 U.S. 408 418, 125 S.Ct. 1807, 1814 (2005) (citation omitted); *see also Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000), *cert. denied,* 531 U.S. 968, 121 S. Ct. 404 (2000) (quoting *Smith*, 208 F.3d at 17); *Doe*, 391 F.3d at 154; *Spaulding v. Cunningham*, No. 04-CV-2965, 2005 WL 1890398, at *3 (E.D.N.Y. Aug. 4, 2005); *Agramonte v. Walsh*, 00 CV 892, 2002 WL 1364086, at *1 (E.D.N.Y. June 20, 2002).  "To merit application of equitable

13

tolling, the petitioner must demonstrate that he acted with reasonable diligence during the period he wishes to have tolled, but that despite his efforts, extraordinary circumstances beyond his control prevented successful filing during that time." *Smaldone v. Senkowski*, 273 F.3d 133, 138 (2d Cir. 2001), *cert. denied*, 535 U.S. 1017 (2002) (internal quotation and citation omitted); *see also Warren*, 219 F.3d at 113 (citing *Smith*); *West v. Hamill*, No. 04-CV-2393, 2005 WL 1861735, at *1 (E.D.N.Y. Aug. 1, 2005) (citing *Smith*).

In this instance petitioner has alleged no facts which would warrant the application of equitable tolling.  Even crediting petitioner's claim that over the years following termination of the one-year limitation period he diligently tried but was unable to access legal materials associated with his conviction and that those papers were necessary in order to properly present the instant claim, such matters do not suffice to establish entitlement to equitable tolling. See, e.g. *United States v. Delgado*, No. S9 CR. 126 (JFK), 00 Civ. 2376 (JFK) and 00 Civ. 2465 (JFK), 2003 WL 21219850, at * 2 (S.D.N.Y. May 22, 2003) ("A lack of access to legal resources is not . . . considered extraordinary circumstance.") (citation omitted); *Warren v. Kelly,* 207 F. Supp.2d 6, 10 (E.D.N.Y. 2002) ("[t]ransfers between prison facilities, solitary confinement, lock downs, restricted access to the law library and an inability

14

to secure court documents do not qualify as extraordinary circumstances);

*Frances v. Miller,* 198 F. Supp. 2d 232, 235 (E.D.N.Y. 2002) (similarly noting

that the limited education, ignorance of the law and legal procedures, lack of

funds, limited access to legal assistance, and limited use of prison library do

not qualify as exceptional for purposes of warranting equitable tolling).

　　　Because I find that the petition in this case was filed well after the close

of the governing one-year limitation period, and conclude that petitioner is

neither entitled to the benefit of the due diligence provision of section

2244(d)(1)(D) nor equitable tolling, I recommend that his petition be

dismissed as untimely.

　　　B.　　Merits

　　　　　1.　　Standard of Review

　　　Another of the AEDPA's limitations provisions was addressed to the

level of deference to be afforded to state court rulings in a habeas

proceeding.  Under the AEDPA, "a determination of a factual issue made by

a State court shall be presumed to be correct [and t]he applicant shall have

the burden of rebutting the presumption of correctness by clear and

convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Boyette v. Lefevre*,

246 F.3d 76, 88 (2d Cir. 2001) (quoting § 2254(e)(1)) (internal quotes

omitted).  Significantly, a federal court may not grant habeas relief to a state

prisoner on a claim

> that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim –
>
> > 1) resulted in a decision that was contrary
> > to, or involved an unreasonable
> > application of, clearly established Federal
> > law, as determined by the Supreme Court
> > of the United States; or
> >
> > 2) resulted in a decision that was based
> > on an unreasonable determination of the
> > facts in light of the evidence presented in
> > the State court proceeding.

28 U.S.C. § 2254(d); *see also Thibodeau v. Portuondo*, 486 F.3d 61, 64 (2d

Cir. 2007); *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001), *cert. denied*, 534

U.S. 886, 122 S. Ct. 197 (2001); *Boyette*, 246 F.3d at 88.  When applying

this test, the Second Circuit has noted that

> [u]nder AEDPA, we ask three questions to determine
> whether a federal court may grant habeas relief: (1)
> Was the principle of Supreme Court case law relied
> upon in the habeas petition "clearly established"
> when the state court ruled? (2) If so, was the state
> court's decision "contrary to" that established
> Supreme Court precedent? (3) If not, did the state
> court's decision constitute an "unreasonable
> application" of that principle?

*Williams v. Artuz*, 237 F.3d at 152 (citing *Francis S. v. Stone*, 221 F.3d 100,

108-09 (2d Cir. 2000) (citing *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495 (2000)).

Because the AEDPA's restriction on federal habeas power was premised in no small part upon the duty of state courts to uphold the Constitution and faithfully apply federal laws, the AEDPA's exacting review standards apply only to federal claims which have been actually adjudicated on the merits in the state court.  *Washington v. Schriver*, 255 F.3d 45, 52-55 (2d Cir. 2001).  Specifically, as the Second Circuit explained in *Sellan v. Kuhlman*, "[f]or the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment."  261 F.3d 303, 312 (2d Cir. 2001); *see Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (citing *Sellan*), *cert. denied sub nom.*, *Jimenez v. Graham*, 549 U.S. 1133,127 S. Ct. 976 (2007).  Significantly, the Second Circuit further held that when a state court adjudicates a claim on the merits, "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – *even if the state court does not explicitly refer to either the federal claim or to relevant*

17

*federal case law.*" *Sellan*, 261 F.3d at 312 (emphasis added).[8, 9]

When a state court's decision is found to be decided "on the merits",

that decision is "contrary to" established Supreme Court precedent if it

applies a rule that contradicts Supreme Court precedent, or decides a case

differently than the Supreme Court on a set of materially indistinguishable

facts. *Williams*, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.  Moreover, a

federal court engaged in habeas review must also determine not whether

the state court's determination was merely incorrect or erroneous, but

instead whether it was "objectively unreasonable".  *Sellan*, 261 F.3d at 315

(quoting *Williams*, 529 U.S. at 409, 120 S. Ct. at 1521 (O'Connor, J.)).  The

Second Circuit has noted that this inquiry admits of "[s]ome increment of

incorrectness beyond error", though "the increment need not be great[.]"

---

[8]     In the past, when wrestling with interpretation and application of the AEDPA's deference standard the Second Circuit had suggested, although leaving open the question, that deference under section 2254(d) is not mandated if a state court decides a case without citing to federal law or otherwise making reference to a federal constitutional claim in a manner adequate to justify deference under AEDPA, in which case pre-AEDPA standards would apply.  *Washington*, 255 F.3d at 52-55; *see also Noble*, 246 F.3d at 98.   That court clarified in *Sellan*, however, that the question of whether or not a state court makes specific reference to a constitutional principle is not controlling.

[9]     In his opinion in *Sellan*, Chief Judge Walker acknowledged that enlightenment in state court decisions as to the manner of disposition of federal claims presented would greatly enhance a federal court's ability, on petition for habeas review, to apply the AEDPA deference standard.  *Sellan*, 261 F.3d at 312.  He noted, however, that a state court's failure to provide such useful guidance does not obviate a federal court's duty to make the analysis and pay appropriate deference if the federal claim was adjudicated on the merits, albeit tacitly so.  *Id.*

18

*Francis S.*, 221 F.3d at 111.

In this instance petitioner's *Brady* argument was presented to but rejected by the trial court in the context of his section 440.10 petition. That determination is therefore entitled to AEDPA deference.

### 2.   Clearly Established Supreme Court Precedents

In *Brady,* the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. 1194, 1196-97. To prove a *Brady* violation, a habeas petitioner must establish that 1) the evidence at issue is favorable to the accused, either as tending to exculpate, or because it is impeaching; 2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and 3) prejudice resulted from the withholding. *Boyette*, 246 F.3d at 89 (citing *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 1948 (1999)); *see also Leka v. Portuondo*, 257 F.3d 89, 98 (2d Cir. 2001). The rule announced in *Brady* is clearly established for AEDPA purposes. *Huber v. Schriver*, 140 F. Supp. 2d 265, 274 (E.D.N.Y. 2001).

### 3.   Contrary To, or Unreasonable Application of, Supreme Court Precedent

19

At the heart of the *Brady* requirement is the principle that the prosecution violates a defendant's right to due process when suppressing evidence that, had it been disclosed, "would have created the reasonable probability of a different result at trial."  *Green v. Vacco*, 961 F. Supp. 46, 49 (W.D.N.Y. 1997).  The burden of establishing the *Brady* violation rests with the petitioner.  *See Mackenzie v. Portuondo*, 208 F. Supp. 2d 302, 321 (E.D.N.Y. 2002) (*citing Boyette*, 246 F.3d at 88.

In this instance, as the trial court found, despite being armed with a verbatim transcript of S.A.'s videotape testimony petitioner has been unable to articulate why the videotape qualifies as exculpatory and how, by being provided to his counsel, it could have altered the jury's guilty verdict.  Under these circumstances the state court determination that no *Brady* violation occurred is neither contrary to nor an unreasonable application of clearly established Supreme Court precedent, and thus is entitled to deference.[10]

---

[10]       Petitioner also asserts a *Rosario* violation based upon the prosecutor's failure to provide the videotaped testimony at issue.  That case, however, was not grounded in any federal constitutional guaranty, but instead announced a court-created rule of evidence that does not give rise to a basis for habeas intervention.  *See People v. Jackson*, 78 N.Y.2d 638, 644, 578 N.Y.S.2d 483 (1991) ("*Rosario* is not based on the State or Federal Constitutions.  It is, in essence, a discovery rule . . . .").  "Thus, any error under *Rosario* is not reviewable in habeas petition."  *Mackenzie v. Portuondo*, 208 F. Supp. 2d at 315 (citing *Padro v. Strack*, 169 F. Supp. 2d 177, 180-81 (S.D.N.Y. 2001).

IV.   <u>SUMMARY AND RECOMMENDATION</u>

Petitioner commenced this action seeking this court's habeas intervention well after the expiration of one year following the date upon which the state court conviction he now challenges became final.  Finding no basis to conclude that petitioner could not have discovered the factual predicate for his *Brady* claim prior to the date upon which his conviction became final, and discerning no basis to invoke tolling, equitable or otherwise, to an extent necessary to salvage his otherwise untimely claim, I recommend a finding that Walter's petition be dismissed.  Turning to the merits, I find that the state court's determination that petitioner has not established a *Brady* violation arising from the failure of the prosecution to provide him with a videotape of the victim's grand jury testimony was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent, and is therefore entitled to AEDPA deference.  Accordingly, it is respectfully

RECOMMENDED that the petition in this matter be DENIED and DISMISSED in all respects; and it is further

RECOMMENDED, based upon my finding that Walter has not made a "substantial showing of the denial of a constitutional right" pursuant to 28

21

U.S.C. § 2253(c)(2), that a certificate of appealability not issue with respect to the claim set forth in his petition.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days of service of this report.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      June 25, 2009
            Syracuse, NY

22